# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

ESTATE OF JUSTIN FIELDS,
KATRINKA TORAN, and
BOBBY FIELDS,

           Plaintiffs,

    v.                                     Case No. 03-CV-1450

OFFICER CRAIG NAWOTKA,
CHIEF ARTHUR L. JONES, and
CITY OF MILWAUKEE,

           Defendants.

_____

# ORDER

On March 2, 2003, Milwaukee Police Department Officer Craig Nawotka ("Nawotka") fatally shot Justin Fields. The Estate of Justin Fields ("Estate") asserts a claim of excessive force against defendant Nawotka. The Estate also asserts a claim pursuant to *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978), against the City of Milwaukee (the "City") and then-Police Chief Arthur L. Jones ("Jones") based upon the City's alleged *de facto* policy or custom condoning excessive force through its inadequate investigation of shootings by police officers and by its failure to hold officers accountable for their alleged unreasonable uses of deadly force. Plaintiffs Katrinka Toran and Bobby Fields, Justin Fields' parents, assert claims for the loss of their son's society and companionship. The plaintiffs have filed discovery related motions together with a motion for default judgment. The defendants have filed a motion for summary judgment. For the reasons stated below, the court is obliged to deny the plaintiffs'

motions and grant in part and deny in part the defendants' motion for summary judgment.

I.      **Plaintiffs' Discovery Motions and Motion for Default Judgment**

On May 30, 2007, two days before the close of discovery, the plaintiffs moved to compel discovery of: (1) the identity of the persons in the City Attorney's office who had involvement with the Affidavit of Steven M. Settingsgaard, which was filed in this Court in *Jenkins v. Bartlett*, Case No. 02-C-1136; and (2) the counseling records of Milwaukee Police Officer Craig Nawotka before and after his fatal shooting of Justin Fields on March 2, 2003. This motion will be denied because the plaintiffs failed to comply with Civil Local Rule 37.1 which states: "All motions for discovery pursuant to Fed. R. Civ. P. 26 through 37 must be accompanied by a written statement by the movant that, after personal consultation with the party adverse to the motion and after sincere attempts to resolve their differences, the parties are unable to reach an accord. The statement must also recite the date and time of such conference and the names of all parties participating in it." In this case, plaintiffs' counsel merely left a voice-mail message for defendants' counsel and, without engaging in any discussion, filed a motion to compel the same day. There was no personal consultation and no serious attempts to resolve the issue. The court's scheduling order, modified several times at the request of the parties, also prohibits an enlargement of the discovery deadline unless a party files a motion demonstrating good cause at least 30 days prior to the close of discovery. (*See*

Order ¶ 8, Aug. 3, 2004.) As the defendants note, the plaintiffs were in a position to file the motion to compel as early as 2005.

The court will also deny the plaintiffs' motion for an enlargement of time to conduct discovery regarding the defendants' computer-generated animation of the Fields' shooting. The plaintiffs did not file their motion at least 30 days prior to the close of discovery, and the plaintiffs have not demonstrated good cause for the enlargement of time. The defendants presented the computer-generated animation to the plaintiffs on February 1, 2007. The plaintiffs do not explain why they were unable to conduct all necessary discovery between February 1, 2007, and the close of discovery on June 1, 2007.

The plaintiffs' motion for default judgment against defendant Jones will also be denied. This action should not have been removed to federal court unless all of the defendants signed the notice of removal. *See Roe v. O'Donohue*, 38 F.3d 298, 301 (7th Cir. 1994) (overruled on other grounds by *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344(1999)). Jones did not join in the petition for removal. The plaintiffs, however, were required to raise this procedural defect within 30 days of the removal. *See* 28 U.S.C. § 1447(c); *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003) ("This defect in the removal process could have justified a remand, but because 30 days passed without protest-and the problem does not imperil subject-matter jurisdiction-the case is in federal court to stay."). Jones did not file an answer to the complaint, but on June 3, 2004, counsel for defendants City of Milwaukee and Craig Nawotka filed a letter stating, "I respectfully note that I

represent Chief Jones in the above-captioned matter, and that all documents previously filed on behalf of Officer Craig Nawotka and the City of Milwaukee are filed on behalf of Chief Jones as well." The plaintiffs did not object to this procedure at the time, within the context of the parties' Rule 26(f) report, during Jones' deposition, or at any point during the first three and one-half years that this litigation was pending. The plaintiffs do not dispute that Jones has actively participated in the defense of this action. In determining whether to enter a default judgment, the court may consider a number of factors including whether the default is largely technical and whether the plaintiffs were substantially prejudiced. *See Wolf Lake Terminals, Inc. v. Mutual Marine Ins. Co.*, 433 F. Supp. 2d 933, 941 (N.D. Ind. 2005) (citing 10A Charles Alan Wright & Arther R. Miller, Federal Practice and Procedure § 2685 (3d ed. 1998)). Considering these factors, the court concludes that, in this instance, default judgment is inappropriate.

For the purposes of deciding the defendants' motion for summary judgment, the court denies the plaintiffs' motion to preclude use of the defendants' computer animations (Docket #110) and the plaintiffs' motion to strike affidavits of Mary K. Hoerig and Stephen R. Basting (Docket #115). The computer animations and the affidavits do not bear upon the court's determination of the defendants' motion for summary judgment.

## II. Defendants' Motion for Summary Judgment

The court will grant in part and deny in part the defendants' motion for summary judgment. The defendants argue that Justin Fields' parents, Katrinka

Toran and Bobby Fields, cannot maintain independent causes of action resulting from the loss of their son's society and companionship; that Nawotka did not use excessive force; that Nawotka is entitled to qualified immunity; and that the City of Milwaukee was not deliberately indifferent with respect to the training and supervision of its officers in the area of the use of deadly force.

### A. Katrinka Toran and Bobby Fields' Claims for Loss of Their Son's Society and Companionship

The plaintiffs do not dispute that Katrinka Toran and Bobby Fields cannot maintain independent causes of action resulting from the loss of their son's society and companionship. Based upon the plaintiffs' forfeiture of these claims and upon *Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005),[1] the court grants the defendants' motion for summary judgment with respect to Katrinka Toran and Bobby Fields' claims.

### B. The Estate's Excessive Force Claim Against Nawotka

#### BACKGROUND

At approximately 2:00 a.m. on March 2, 2003, Nawotka heard what sounded like the air horn of a fire truck. Nawotka observed a Milwaukee Fire Department rig located in a southbound lane on Water Street in downtown Milwaukee. (Nawotka Aff'd ¶¶ 3-6.) Nawotka observed Justin Fields' vehicle, a light-colored Cadillac, and believed that his vehicle was blocking the lane for the fire truck. (*Id.* ¶ 12.) Nawotka

---

[1] In *Russ*, the Seventh Circuit overruled its prior decision, *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984), holding that parents may not assert "a constitutional right to recover for the loss of the companionship of an adult child when that relationship is terminated as an incidental result of state action." *Russ*, 414 F.3d at 791. As the Seventh Circuit explained, "Neither *Bell* nor the instant case involved intentional action by the state to interfere with a familial relationship; plaintiffs in this case have not alleged that Watts shot Russ for the specific purpose of terminating Russ's relationship with his family. Affording plaintiffs a constitutional due process right to recover against the state in these circumstances would create the risk of constitutionalizing all torts against individuals who happen to have families." *Id.* at 790.

started to approach the vehicles when he observed Fields' vehicle parked parallel to the curb, albeit in a jerking fashion, allowing vehicles behind him to pass. Nawotka continued to approach the front of Fields' vehicle when the vehicle lurched or jerked forward. (*Id.* ¶ 16.) Witness accounts about the speed and distance of the lurch vary, but it appears the vehicle lurched somewhere between one and five feet. In response to the lurch, Nawotka withdrew his service weapon from his holster and held it in a "low-ready" position, meaning that it was pointed at an angle toward the ground. (Id. ¶ 17.) Nawotka continued to move toward the vehicle and ordered Justin to stop the car and turn off the engine. The vehicle did not move again, and Nawotka holstered his service weapon. Nawotka continued to order Justin to turn off the engine. By the time Officer Nawotka reached the area of the driver's door, Justin had not yet turned off his vehicle. Nawotka heard Justin utter such statements as "fuck the police." Nawotka attempted to reach into the open driver's window for the purpose of turning off the ignition and grabbing the car keys. Justin closed the window before Nawotka was able to retrieve the keys. The parties dispute whether Nawotka continued to order Justin to turn off the engine. Nawotka smashed in the driver's window using a metal baton. Justin sped away from Nawotka's location at a high rate of speed, weaving in and out of traffic. Water Street was congested with people and cars at the time. (*See* Thomas Brummond Dep., May 5, 2005, Docket #107.)

Nawotka ran back to his squad car and began to pursue Justin's vehicle. Nawotka told his partner, Officer Thomas Brummond, "That vehicle just tried to run

me over," but Nawotka later conceded that this was a false statement. Brummond communicated the false statement to other officers over the radio. (*Id.*) Justin's vehicle collided with a car stopped at the intersection of Martin Luther King Drive and North Avenue. Justin's vehicle spun out and moved in reverse until its back left tire touched the curb. Driving his squad car, Nawotka approached Justin's vehicle until the front of the cars were facing each other approximately 10-15 feet apart. Nawotka exited the squad and walked to the front of the squad and toward the front of Justin's vehicle. Nawotka observed that there was significant damage to Justin's vehicle, and the damage included a flat front tire. Justin's vehicle backed up 4-6 feet as if performing a y-turn, and then started moving forward pulling away from the curb. Officer Cory Washington testified that Justin's vehicle was not going more than 10 to 15 miles per hour. (*See* Cory Washington Dep., April 6, 2005, Docket #107.) Michael Restivo, a citizen located in the squad car, testified that Justin's vehicle came out of its y-turn and started going north on Martin Luther King Drive. (*See* Michael Restivo Dep., March 16, 2005, Docket #107.) In the following moments, Nawotka fired three shots at Justin's vehicle, and one of the bullets struck and killed Justin. The parties' versions of these following moments vary greatly.

Nawotka claims that he was in the path of Justin's vehicle; he looked over his shoulder, but he did not believe that he could escape the oncoming vehicle; the vehicle was moving toward him, sliding or skidding sideways as if it were out of control; Nawotka believed that Justin was attempting to kill him or cause significant bodily harm to him by striking him with the vehicle; Nawotka decided to fire his

-7-
Case 2:03-cv-01450-JPS   Filed 03/18/08   Page 7 of 20   Document 125

service weapon at Justin to stop his assaultive actions; Nawotka fired three bullets at Justin, and Justin's vehicle was less than ten feet from Nawotka at the time; once Nawotka realized that the vehicle was turning away from him and was no longer coming toward him, he stopped firing his weapon. (Nawotka Aff'd ¶¶ 67-62.)

The plaintiffs dispute that Nawotka was in the path of the vehicle. Brummond testified that they never saw Nawotka in front of Justin's vehicle. The plaintiffs dispute that Nawotka looked over his shoulder to see whether he could escape the oncoming vehicle. The plaintiffs argue that Nawotka's testimony has changed over time. In his initial statement, Nawotka does not mention looking over his shoulder at all; in a later statement, Nawotka claims that he looked over his right shoulder; in a later statement, Nawotka claims that he looked over his left shoulder. The plaintiffs claim that Nawotka fired his service weapon when Justin's vehicle was already driving away and when Nawotka had no basis to fear for his safety. Restivo testified that Nawotka was walking fast after Justin's vehicle when he fired shots at Justin's car. Brummond testified that he was surprised when he heard gun shots because he had already returned to the squad car, holstered his gun, and saw Justin's car drive away. Washington testified that Nawotka fired at Justin's vehicle after Justin was driving away from Nawotka. Plaintiffs' expert David Townshend opined that Nawotka was in no danger when he fired shots at Justin's vehicle. The plaintiffs argue that Nawotka's account has changed over time. In his initial interview, Nawotka stated that he fired as the vehicle was coming toward him, but Nawotka later testified that he decided to fire his weapon when the car was

-8-
Case 2:03-cv-01450-JPS    Filed 03/18/08    Page 8 of 20    Document 125

"sideways" and when he saw Justin through the driver's window. The bullet holes in Justin's vehicle demonstrate that the bullets entered the left rear of the vehicle. Reginald Templin, a firearm and tool mark examiner in the crime laboratory of the State of Wisconsin Department of Justice, testified that two bullets struck the vehicle's left rear door and the third bullet entered through the rear window. Milwaukee County Medical Examiner Jeffrey Jentzen testified that the bullet entered through the rear window of Justin's vehicle before striking Justin in the back.

## ANALYSIS

Summary judgment is proper where the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court construes all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002). In evaluating a motion for summary judgment, the district court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001).

"A police officer's use of deadly force constitutes a seizure within the meaning of the Fourth Amendment, and therefore it must be reasonable." *Scott v. Edinberg*, 346 F.3d 752, 755 (7th Cir. 2003). "The fact-specific nature of whether an officer

-9-
Case 2:03-cv-01450-JPS   Filed 03/18/08   Page 9 of 20   Document 125

used excessive force depends on the totality of the circumstances surrounding the encounter." *Id.* at 756. The "particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The reasonableness calculation "must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396-97. The reasonableness inquiry is objective, and the officer's subjective belief or motivations are irrelevant. *Id.* at 397. An officer may use even deadly force if "the suspect poses a threat of serious physical harm, either to the officer or to others," *Tennessee v. Garner*, 471 U.S. 1, 11 (1985), but "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Id.* "[I]f the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Id.* at 11-12; *Sherrod v. Berry,* 856 F.2d 802, 805 (7th Cir. 1988) (en banc) ("[W]hen an officer believes that a suspect's actions [place] him, his partner, or those in the immediate vicinity in imminent danger of death or serious bodily injury, the officer can reasonably exercise the use of deadly force."); *Scott,* 346 F.3d at 756.

Construing all evidence and inferences in favor of the plaintiffs, *see Anderson*, 477 U.S. at 255, the court determines that genuine issues of material fact preclude summary judgment on the Estate's excessive force claim against Nawotka. Nawotka may have believed that he was in imminent danger of death or serious bodily injury when he fired his weapon at Justin, and Nawotka may have believed that Justin intended to strike him with the vehicle, using the vehicle as a weapon. If Nawotka's beliefs are *reasonable*, he did not exercise excessive force. However, whether Nawotka's beliefs are reasonable depends upon disputed issues of fact, including the movement of Justin's vehicle and the position of Nawotka in relation to Justin's vehicle, particularly at the time that he fired his weapon. *See Scott,* 346 F.3d at 757-58 ("If the fatal shot was fired while Mr. Scott was driving away, then the argument that Officer Edinburg was compelled to fire in order to protect himself would be significantly weakened."); *Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir. 1993) ("When an officer faces a situation in which he could justifiably shoot, he does not retain the right to shoot at any time thereafter with impunity."). *Scott* is illustrative. In *Scott*, an officer argued that deadly force was justified to protect himself because a suspect attempted to back over him with a vehicle. The Seventh Circuit held that summary judgment was inappropriate because there was a genuine issue of fact regarding whether the officer fired his weapon when the car was backing toward him, standing still, or moving away from him. As the court noted, "If the fatal shot was fired while Mr. Scott was driving away, then the argument that Officer Edinburg was compelled to fire in order to protect himself would be significantly weakened." *Id.* at 757-58.

In this case, there is evidence in the record that Nawotka fired his weapon when Justin's vehicle was traveling away from him. The jury must resolve disputed issues of fact to determine whether Nawotka used excessive force.

Similarly, disputed issues of fact preclude a finding of qualified immunity. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Id.* The right that the officer is alleged to have violated must have been "clearly established" in a particularized sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

When considering a defendant's motion for summary judgment based upon qualified immunity, the court accepts the plaintiff's version of the facts and draws all reasonable inferences in her favor just as it would upon any other motion for summary judgment. *See Estate of Starks v. Enyart*, 5 F.3d 230, 232 (7th Cir. 1993); *Knox v. McGinnis*, 998 F.2d 1405, 1409 (7th Cir. 1993). If the legal question of qualified immunity is dependent upon which view of the facts is accepted by the trier of fact, then summary judgment is not appropriate on the issue of qualified immunity, *see Cowan ex rel. Estate of Cooper v. Breen,* 352 F.3d 756, 762-63 (2d Cir. 2003); *Adam v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994); *Starks*, 5 F.3d at 234-35; *DeJohnette v. Lipinski*, 1997 WL 137177, at *3 (N.D. Ill. Mar. 24, 1997); *Estate of Bryant v. Buchanan*, 883 F.Supp. 1222, 1227 (S.D. Ind. 1995), and the appellate court will dismiss an interlocutory appeal for lack of jurisdiction. *See Omdahl v. Lindholm*, 170 F.3d 730, 734 (7th Cir. 1999); *Starks*, 5 F.3d at 233.

In this case, the defendants ignore disputed issues of fact and premise their qualified immunity argument upon Nawotka's version of events. (*See* Defs.' Br. 36, 39, Jun. 29, 2007) (asserting that Nawotka reasonably believed that Justin threatened Nawotka's life by using a vehicle as a weapon against Nawotka, that Nawotka was in the vehicle's direct path when he fired his weapon, and that Nawotka reasonably perceived that his life was in imminent danger when he fired his weapon). Under the plaintiffs' version of the facts which this court must credit, Nawotka was never in the direct path of Justin's vehicle, Nawotka fired his weapon as the vehicle was already traveling away from him, the vehicle was driving away at

low speeds, and the vehicle was significantly damaged and had a flat tire. Under the plaintiffs' version of the facts, nobody in the immediate vicinity was in imminent danger of death or serious bodily injury when Nawotka fired his weapon.

Under these facts and in light of clearly established law, a reasonable officer in Nawotka's position would not have believed that exercising deadly force was lawful. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."); *Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988) (en banc) ("[W]hen an officer believes that a suspect's actions [place] him, his partner, or those in the immediate vicinity in imminent danger of death or serious bodily injury, the officer can reasonably exercise the use of deadly force."); *see also McCaslin v. Wilkins*, 183 F.3d 775, 778-779 (8th Cir. 1999) (holding that factual disputes precluded summary judgment in an action involving officers shooting at a suspect who was driving a vehicle and attempting to avoid arrest); *Abraham v. Raso,* 183 F.3d 279, 288-296 (3rd Cir. 1999) (same); *Starks*, 5 F.3d at 233 (same). If Nawotka fired his weapon while the car was driving away from him, he was not in imminent danger of death or serious bodily injury. *See Ellis*, 999 F.2d at 247 (7th Cir. 1993) ("When an officer faces a situation in which he could justifiably shoot, he does not retain the right to shoot at any time thereafter with impunity."). Also, unlike the officers in *Scott* and *Brosseau*, Nawotka does not claim that there were bystanders in the immediate vicinity that faced death or serious bodily injury at the time that he fired his weapon, and the record in this case does not

reveal that anybody was in the vicinity of the vehicle's path when Nawotka fired his weapon. *See Scott*, 346 F.3d at 758 (stating that there were between twelve to fourteen people in the vicinity of the vehicle's path whose safety Officer Edinburg believed was at risk). Moreover, when Nawotka fired his weapon, Justin's vehicle was badly damaged, traveling slowly, and had a flat tire. Even if there were people standing in the vicinity of the vehicle's path, a reasonable officer may not have concluded that they were in imminent danger. *See Starks*, 5 F.3d at 233 (determining that under the plaintiff's version of the facts, the plaintiff's escape attempt did not involve menacing an officer or a civilian and despite the plaintiff's quick acceleration, "his attempt to maneuver the cab was not so reckless that . . . police officers could reasonably fear for their safety or the safety of the community."); *see also Lehman v. Robinson*, 228 Fed. Appx. 697, 700 (9th Cir. 2007) (noting that the suspect could not travel anywhere quickly as a result of the vehicle's completely flattened tires). As in *Starks*, under the plaintiffs' version of the facts, Justin did not menace an officer or a civilian and merely attempted to maneuver his damaged vehicle at a low rate of speed to avoid Nawotka and Nawotka's squad car. This maneuver is not so reckless that an officer could reasonably fear for the safety of the community. These facts are different than the factual circumstances in *Cole v. Bone*, 993 F.2d 1328 (8th Cir. 1993), *Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992), and *Frairie v. City of Arlington*, 957 F.2d 1268 (5th Cir. 1992). *Cole* and *Smith* involved suspects who intentionally swerved toward and crashed into police squad cars and posed an imminent danger to those in the immediate vicinity. *See Cole*,

993 F.2d at 1330-34; *Smith*, 954 F.2d at 343-44. *Frairie* involved a suspect who was driving a truck directly at a police officer. See *Frairie*, 957 F.2d at 1272. Other courts, recognizing the fact-intensive nature of excessive force cases, have similarly distinguished these cases. See *Lehman*, 228 Fed. Appx. at 700 (distinguishing *Smith* on the basis that Lehman could not travel anywhere quickly as a result of his vehicle's completely flattened tires); *Sigley v. City of Parma Heights*, 437 F.3d 527, 536 (6th Cir. 2006) (distinguishing *Smith* on the basis that the suspect in *Smith* attempted to ram a police cruiser on two separate occasions and intentionally crashed into the front end of a police cruiser); *McCaslin*, 183 F.3d at 779 (distinguishing *Cole* on the basis that "there was no dispute regarding what the driver was doing at the time the officer shot and killed him"). Because material factual disputes overlap both the excessive force and qualified immunity issues, the court must deny summary judgment.

**C.     The Estate's *Monell* Claims Against the City and Jones**

The plaintiffs argue that the City of Milwaukee and former Milwaukee Police Department Chief Arthur Jones failed to institute an authentic administrative review of officer-involved shootings of civilians and failed to discipline officers for unreasonable uses of deadly force. The plaintiffs' expert, Lou Reiter, states that the defendants' internal affairs investigation was contingent on the outcome of the district attorney's office criminal investigation and that this practice is unreasonable and inconsistent with generally accepted police supervisory practices.

A municipality may only be constitutionally liable under § 1983 for violations caused by the municipality itself through its own policies and customs. *Monell*, 436 U.S. at 694. Although a municipality may be liable under this "policy or custom" theory, there must be a causal link between the constitutional violations and the municipality's actual policies or customs. *See id.* A municipal practice may be actionable under § 1983 if a plaintiff can establish that the policy or decision making acquiesced in a pattern of unconstitutional conduct. *Cornfield v. Consolidated High School Dist. No. 230,* 991 F.2d 1316, 1326 (7th Cir. 1993).

The plaintiffs set forth that their claims are *not* based upon a failure to train; rather, they are based upon the failure of the Milwaukee Police Department's policy makers to formulate and execute an internal administrative review of officer shootings and discipline those that have been found to unreasonably use deadly force. Plaintiffs argue this failure amounts to a constitutional deprivation because: (1) it creates a *de facto* custom of unreasonable use of deadly force; (2) it is contrary to written policy and accepted police practices; and (3) it authorizes the unreasonable use of deadly force. The plaintiffs argue that the Milwaukee Police Department's shortcomings amount to "deliberate indifference" and an actionable § 1983 municipality claim. *See Canton v. Harris*, 489 U.S. 378, 388-89 (1989).

The court determines that, based upon this theory, there is a genuine issue of material fact that precludes summary judgment. Viewing the evidence in the light most favorable to the plaintiffs, the court determines that there is a material factual issue regarding the police department customs. Unlike this court's previous

decisions relating to *Monell* claims for a failure to investigate, the plaintiffs articulate and present evidence about Milwaukee Police Department's investigation practices that could establish their inadequacy. *See Jenkins v. Bartlett*, 487 F.3d 482 (7th Cir. 2007).

The plaintiffs' retained expert, Lou Reiter, averred that the Milwaukee Police Department has a policy of inadequate investigation that allows an environment for the use of unreasonable force because officers may believe they will not be held accountable for the consequences of using deadly force. (Reiter Aff'd ¶ 5.) Reiter further states that the Milwaukee Police Department may have had notice of this inadequate policy as early as 1992, and, in spite of opportunities to amend its policies, it has not done so. (*Id.* ¶¶ 7-10.) Reiter also criticizes the "inquest" process after fatal shootings because this process involves a burden of proof beyond a reasonable doubt and argues that the "reliance on criminal proceedings and the prosecutor's filing decision – which utilize a much higher standard burden of proof – is unreasonable and inconsistent with generally accepted police supervisory practices." (*Id.* ¶ 14.) Finally, Reiter concludes that the failure to conduct an internal administrative investigation after the use of deadly force incidences

> constitutes deliberate indifference against citizens by the ratification of egregious police field practices known within the law enforcement industry to result in unreasonable uses of force and deadly force resulting in fatal injuries to citizens. . . . These acts, omissions, and acquiesces . . . created an environment which would allow an officer to engage in improper use of deadly force [and were factors that] were significant and causal in the death of Justin Fields.

(*Id.* ¶ 15.) The defendants claim that the internal review process is adequate and even if it were not, there was no causal link between the Milwaukee Police Department's failure to investigate and Fields' death. However, the court finds that the plaintiffs' record evidence and supporting affidavits create genuine issues of material fact as to whether or not the investigation process did create a *de facto* policy of ratifying officer use of deadly force; the court further finds that the plaintiffs' submissions create a genuine issue for trial regarding the causal link between the review process and the fatal shootings. In sum, given the material factual disputes, summary judgment on the plaintiffs' *Monell* claims is inappropriate.

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (Docket #67) be and the same is hereby **GRANTED in part** and **DENIED in part**;

**IT IS FURTHER ORDERED** that the plaintiffs' motion to compel (Docket #47) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the plaintiffs' motion for an extension of time (Docket #51) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the plaintiffs' motion for default judgment (Docket #60) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the plaintiffs' motion to preclude use of the defendants' computer animations (Docket #110) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that the plaintiffs' motion to strike (Docket #115) be and the same is hereby **DENIED as moot**.

Dated at Milwaukee, Wisconsin, this 18th day of March, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge